*Formatted for Electronic Distribution*                                                                                          *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
February 26, 2014

**In re:**

    **Richard Clark,**                                          Chapter 13 Case
            **Debtor.**                                             # 13-10904

*Appearances:*      *Michelle Kainen, Esq.*                     *Jeffrey P. White, Esq.*
                          *Kainen Law Office, PC*                  *Pratt Vreeland Kennelly*
                          *White River Junction, VT*               *Martin & White, Ltd.*
                                                                                       *Rutland, VT*

## MEMORANDUM OF DECISION
### DENYING DEBTOR'S REQUEST FOR SANCTIONS
### FOR AN ALLEGED VIOLATION OF THE AUTOMATIC STAY

         On January 11, 2014, the Debtor filed a motion for sanctions against One Credit Union (the "Creditor"), for an alleged violation of the automatic stay (doc. # 12) (the "Motion"). The Creditor responded, asserting that none of its interactions with the Debtor violated the stay (doc. # 13) (the "Response"). On February 6, 2014, the Debtor filed a notice of evidentiary hearing in connection with the Motion, setting the hearing for February 21, 2014. At that hearing, the Debtor and the Creditor's representative testified as to the date, extent, and content of their communications. The Court then took the matter under advisement, and now issues its ruling based upon the record in this contested matter, the credibility of the testimony presented, and the controlling law.

### ISSUES PRESENTED

         The Debtor asserts that in the post-petition telephone conversation he had with the Creditor, the Creditor attempted to collect a debt and caused the Debtor emotional distress warranting both a finding of a stay violation and the imposition of sanctions. The Court therefore must determine whether the Debtor has established facts showing the Creditor violated the stay, and if so, what sanctions are appropriate.

### JURISDICTION

         This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by Chief Judge Christina Reiss on June 22, 2012. This Court declares this contested matter to be a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

The Court further declares it has authority to enter a final judgment in this proceeding.

DISCUSSION

The automatic stay that went into effect on the date the Debtor commenced this bankruptcy case prohibits the Creditor from taking any steps to collect a debt that arose pre-petition, pursuant to 11 U.S.C. § 362(a)(6)[1]. However, as broad as the stay is, it does not prohibit all communication from a creditor to a debtor. See Pertuso v. Ford Motor Credit Co., 233 F.3d 417, 423 (6th Cir. 2000) ("Something more than mere contact must be alleged in order to state a claim under § 362."); In re Ebadi, 448 B.R. 308, 315 n.8 (Bankr. E.D.N.Y. 2011) ("[N]ot every act that can be a step in a chain that eventually might lead to collection of a prepetition debt from a debtor is a stay violation under Section 362(a)(6) of the Code."). For example, when a mortgage holder sends a debtor informational account statements and notifications about the status of the account, that does not violate the automatic stay as long as the statements and notifications are not coercive. See In re Connor, 366 B.R. 133, 137–38 (Bankr. D. Hawaii 2007). In order to constitute a violation of § 362(a)(6), conduct must be of a nature that "(1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances." In re Briggs, 143 B.R. 438, 453 (Bankr. E.D. Mich. 1992).

The Debtor has the burden of proof in establishing facts to show a violation of the stay and a basis for an award of sanctions under § 362(k). In re Surprise, 342 B.R. 119, 121 (Bankr. N.D.N.Y. 2006); In re Garland, 2001 WL 34798966 at *5 (Bankr. D. Vt., August 1, 2001).

The first question is whether and when the Creditor had knowledge of the Debtor's bankruptcy filing. The testimony presented at the evidentiary hearing unequivocally demonstrated that the Creditor did not learn of the Debtor's bankruptcy filing until January 8, 2014. Thus, although the Creditor made several attempts to reach the Debtor by telephone in late December and early January, the only contact that could constitute a violation of the stay is the January 9, 2014 telephone call. See In re Campbell, 398 B.R. 799 (Bankr. D. Vt. 2008). The Creditor emphasized that the Debtor initiated this discussion with the Creditor, but since the Debtor was returning the Creditor's call this fact is of no significance.

The Court turns next to whether the Creditor violated the stay during the course of this telephone conversation. In the Motion, the Debtor alleges the Creditor's representative "stated that she was aware that [the Debtor] had filed a Chapter 13 bankruptcy but that she believed that some of his debts to the Credit Union were not included in the bankruptcy and wanted to know how he intended to pay them." At the evidentiary hearing, the Debtor testified more affirmatively, stating that the Creditor "made a

---

[1] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

demand for payment" during the January 9th telephone discussion. The Creditor's Response states that the collections officer "mentioned that after reviewing the proposed Plan, she did not see any provision for [the VISA credit card account] or the signature loan in the Chapter 13 Plan." In the attached affidavit, the collection officer states that, when asked what she wanted, she "advised [she] did not see any provision for the VISA card or the signature loan in [the Debtor's] plan and wondered what his intentions were respecting the same." Further, at the evidentiary hearing, the Creditor's representative confidently and credibly testified that she did not ask the Debtor to repay the loans. To the extent that the Creditor's description of what was said during the January 9th telephone discussion differs from the Debtor's, the Court finds the Creditor's representative's version to be more credible because, first, the Court found her to be a particularly credible witness, and second, given his own description that he was "panicked" and "freaked out" by the conversation, the Court finds it quite plausible that the Debtor misinterpreted or read into the questions of the Creditor's representative. Based upon the testimony and credibility of the witnesses, the Court finds that there was just one post-petition communication between the parties, that the Creditor did not make a demand for repayment of the debt, and that the Creditor's inquiry was a request for clarification as to whether the credit card and signature loan debts were included in the Debtor's bankruptcy repayment plan. There is no evidence that the Creditor's representative was coercive, was aggressive in tone or choice of words, or said anything that could be objectively interpreted as an effort to collect a pre-petition debt. Accordingly, the Court finds this communication is not a violation of the stay.

Rather, this appears to be a case of misunderstanding on the part of both the Debtor and the Creditor's representative. The testimony at the hearing revealed that the Creditor's representative had not been aware that the subject credit card and signature loan debts were cross-collateralized by the Debtor's vehicle and included in the auto loan balance. Additionally, the undisputed evidence showed that the Debtor had not listed either of these two debts in his schedules - they referred only to the Creditor's secured auto loan and did not identify the credit card or signature loan accounts in either the schedule of secured debts or the schedule of unsecured debts. In light of these facts, the Court does not find it unreasonable that, when the Debtor returned the call post-petition, the Creditor's representative inquired about whether the Debtor intended to treat these two claims in his bankruptcy plan, in addition to the auto loan. There is now question it would have been more appropriate for the Creditor's representative to pose her question to the Debtor's attorney. That would have spared the Debtor the stress he described at the hearing. Similarly, it would have been more thorough for the Debtor to have specifically listed all three debts to the Credit Union in the bankruptcy schedules. That would have obviated the Creditor's

3

need to inquire about the treatment of the two loans. However, neither party acted with malice or intent to violate the requirements of the Bankruptcy Code. These were merely understandable mistakes that, unfortunately, caused the Debtor distress.

This leaves the question of sanctions. The Debtor insists that the telephone conversation in question caused him such significant distress that sanctions are warranted. The Debtor failed to prove this. The only testimony on this point is the Debtor's assertion that he was "freaked out" by the call and panicked that he would not be able to fund his plan if he had to make some additional payment to the Creditor. This is insufficient. The case law on sanctions is straightforward:

> Section 362(k)(1) is remarkably simple and requires the imposition of sanctions on a party violating the automatic stay upon three provisions: First, the offending party must have violated the automatic stay. Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury.

In re Brown, 2012 WL 3908029 at *4 (Bankr. E.D. Pa., Sept. 7, 2012). Where no actual injury is alleged or proven, sanctions for violations of the automatic stay are not appropriate. See In re Freunscht, 53 B.R. 110, 113 (Bankr. D. Vt. 1985); In re Ladieu, 2011 WL 5509216 at *8 (Bankr. D. Vt., November 4, 2011).

Since the Court finds there was no stay violation, there is no basis for an award of sanctions under § 362(k). Moreover, even if a stay violation had occurred, the Debtor has failed to establish facts to justify the imposition of sanctions in this instance. In the Motion, the Debtor alleged only that he "is upset by the credit union's insistence that there are debts he is going to have to pay outside of the bankruptcy." Although he further elaborated on his distress at the hearing, to relate that he was "freaked out" and "panicked" by the communications, he did not allege any tangible damages that he suffered. Such allegations, without more, do not rise to the level of actual injury required to impose stay violation sanctions. See In re Freunscht, 53 B.R. at 113.

At the hearing, the Debtor also asked that the Court require the Creditor to pay the attorney fees he incurred in filing and prosecuting the Motion, as well as the wages he lost as a result of having to be in court to testify. However, since he did not prevail on the Motion, he is not entitled to recover these expenses.

## CONCLUSION

Based upon the record, and particularly focusing on the credibility of the witnesses and the facts established at the evidentiary hearing, and the controlling case law, the Court finds the Debtor has failed to show that the Creditor violated the stay or that the Debtor is entitled to an award of damages. Therefore, the Debtor's Motion is denied.

4

This constitutes the Court's findings of fact and conclusions of law.

| | |
|---|---|
| February 26, 2014 | Colleen A. Brown |
| Burlington, Vermont | United States Bankruptcy Judge |